**Electronically Filed
Intermediate Court of Appeals
30286
13-MAR-2014
08:30 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---oOo---

GARY W. RODRIGUES, Plaintiff-Appellant,
v.
UNITED PUBLIC WORKERS, AFSCME LOCAL 646, AFL-CIO,
Defendant-Appellee,
and
JOHN DOES 1-25; DOE GOVERNMENTAL UNITS 1-5; DOE
CORPORATIONS 1-5; AND DOE ASSOCIATIONS 1-5, Defendants

NO. 30286

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 08-1-2538)

MARCH 13, 2014

NAKAMURA, C.J., FOLEY AND REIFURTH, JJ.

OPINION OF THE COURT BY REIFURTH, J.

Plaintiff-Appellant Gary W. Rodrigues ("Rodrigues")
appeals from (1) the October 7, 2009 Order Denying Plaintiff's
Motion for Partial Summary Judgment as to Liability of Defendant
United Public Workers, AFSCME Local 646, AFL-CIO, Filed June 19,
2009, and Granting Summary Judgment Against Plaintiff ("Summary
Judgment Order"); (2) the November 30, 2009 Order Granting in
Part Defendant's Motion for Attorneys' Fees and Costs, Filed
October 13, 2009; and (3) the December 14, 2009 Final Judgment,

entered in the Circuit Court of the First Circuit ("Circuit Court").[1]

On March 31, 2008, in De Costa v. Rodrigues, Civ. No. 03-00598 DAE-LEK (the "District Court Case"), the United States District Court for the District of Hawaii ("U.S. District Court") entered judgment against Rodrigues in the amount of $850,000.00 for breach of fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. In the instant action before the Circuit Court, Rodrigues, the former State Director of Defendant-Appellee United Public Workers, AFSCME Local 646, AFL-CIO ("UPW"), sought indemnification from UPW for the above-mentioned sum plus his attorneys' fees and costs incurred in defending the District Court Case. The Circuit Court granted summary judgment in favor of UPW on the grounds that ERISA preempted Rodrigues's indemnification claim.

On appeal, Rodrigues argues that the Circuit Court erred in holding that his indemnification claim was preempted under ERISA. We affirm.

I.    Background

   A.    Complaint

On December 9, 2008, Rodrigues filed his Complaint for Indemnity ("Complaint") against UPW in the Circuit Court, alleging as follows:

At all times relevant to this case, Rodrigues was the State Director of UPW, a labor organization. In 1984, UPW "established a mutual aid trust to provide supplemental hospitalization benefits for its members known as the UPW Local 636 Mutual Aid 501(c)(9) Trust [("Trust")]" and agreed to provide administrative services to the Trust ("Agreement"). Under the terms of the Agreement, UPW, "through its State Director acting on its behalf," agreed to administer the money payable to or by the Trust. Rodrigues provided administrative services to the Trust from 1984 until late 2002.

_____

[1]    The Honorable Karl K. Sakamoto presided.

In June 1994, the trustees of the Trust ("Trustees") authorized the investment of Trust funds to be made through the Hewitt Company ("Hewitt Co."). As State Director, Rodrigues "processed all investments of [the] Trust funds through Hewitt [Co.] on behalf of the . . . Trust." Between late 1998 and late 1999, Hewitt Co. made a series of investments in Best Rescue Systems, Inc. ("Best Rescue") totaling $1.1 million.

On December 10, 1999, UPW's parent union, AFSCME, "recommended that the [Trust] demand repayment of all of its investments in Best Rescue"; accordingly, Rodrigues, on behalf of the Trust, demanded repayment. Best Rescue did not immediately comply. In January 2000, UPW, through AFSCME, "filed lawsuits against Best Rescue and Hewitt [Co.] on behalf of the . . . Trust and its members to collect the funds invested in Best Rescue." Hewitt Co.'s principal, Albert Hewitt ("Hewitt"), was later "convicted of criminal violations for his role in [the] Trust's investments in Best Rescue[.]" Best Rescue filed for bankruptcy.

In November 2002, AFSCME suspended Rodrigues from his position as State Director and placed UPW under its administration.

On October 31, 2003, UPW filed a complaint in the District Court Case, seeking recovery from Rodrigues of all of the Trust's losses resulting from its investments in Best Rescue. Following a bench trial in March 2008, the U.S. District Court determined that Rodrigues was liable to the Trust in the amount of $850,000.00 plus costs and fees for negligent breach of fiduciary duties.

Rodrigues alleged in the instant case that his liability to the Trust, as well as his attorneys' fees and costs in defending the District Court Case, "arose solely from acts and/or omissions [that he committed] in his capacity as agent of . . . UPW and/or were authorized and/or ratified by the trustees of the . . . Trust and/or . . . UPW." On that basis, Rodrigues claimed that he was entitled to indemnity from UPW for $850,000.00 plus his attorneys' fees and costs incurred while defending the District Court Case.

B.    Motion for Partial Summary Judgment

On June 19, 2009, Rodrigues filed a motion for partial summary judgment as to the liability of UPW ("Motion for Partial Summary Judgment").  Rodrigues attached several documents from the District Court Case, including the U.S. District Court's March 20, 2008 Findings of Fact and Conclusions of Law ("FOF/COL").

In the FOF/COL, the U.S. District Court explained that UPW's federal complaint had alleged Rodrigues's liability for breach of fiduciary duty in violation of 29 U.S.C. § 1104(a)(1)(A)[2/] ("Count 1"), breach of fiduciary duty by a co-fiduciary pursuant to 29 U.S.C. § 1105[3/] ("Count 2"), and

---

[2/]    § 1104.  Fiduciary duties

(a) Prudent man standard of care

(1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge duties with respect to a plan solely in the interest of the participants and beneficiaries and-

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

29 U.S.C. § 1104(a)(1) (2012).

[3/]    § 1105.  Liability for breach of co-fiduciary

(a) Circumstances giving rise to liability.

. . . . a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another

4

engaging in prohibited transactions in violation of 29 U.S.C. § 1106(a)(1)(D)⁴ᐟ ("Count 3"). The U.S. District Court found and concluded that the Trust was "an employee welfare plan governed by ERISA." It also found that Rodrigues was the Plan Administrator and, while not a Trustee, "was empowered by the [Trust] Board to act on their behalf with regard to investment of [Trust] funds," and that "[the Board] relied upon his judgment." Having concluded that Rodrigues "exercised substantial discretionary authority and control of the management of [Trust] investments, assets and loan decisions[,]" the U.S. District Court further concluded that Rodrigues was a fiduciary of the Trust pursuant to 29 U.S.C. § 1002(21)(A).⁵ᐟ

---

fiduciary with respect to the same plan in the following circumstances:

    (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

    (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

    (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a) (2012).

⁴ᐟ    § 1106. Prohibited transactions

    . . . .

    (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect--

    . . . .

        (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan[.]

29 U.S.C. § 1106(a)(1)(D) (2012).

⁵ᐟ    [A] person is a fiduciary with respect to a plan to the extent[:]

(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has

Considering Count 1, the U.S. District Court concluded, in part, that Rodrigues:

> clearly breached his fiduciary duties with respect to all other loans made to Best Rescue by failing to question Hewitt about the absence of long-term financing and repayment of half of the principal of the first loan, and instead continuing to blindly rely on Hewitt. Indeed, all subsequent Promissory Notes accepted by [Rodrigues] after the initial loan did not refer to long-term financing. [Rodrigues] continued to make further investment into Best Rescue without questioning the absence of the expected long-term financing or the failure of Best Rescue to repay half of the initial loan, as promised in the initial Promissory Note and Security Agreement. Such blind reliance on Hewitt in the face of clear red flags was not reasonably justified. . . . [Rodrigues] should have made an honest, objective effort to read the subsequent Promissory Notes, understand them, and question the areas that did not make sense. If after a careful review of the subsequent Promissory Notes and discussion with Hewitt, there were still uncertainties, [Rodrigues] should have had another expert or attorney review the investment to determine if further investment was warranted.

Thus, the U.S. District Court concluded that Rodrigues breached his fiduciary duties with respect to all loans to Best Rescue other than the initial loan and, therefore, was liable under 29 U.S.C. § 1104 for making an imprudent investment.

Considering Count 2, the U.S. District Court concluded, in part, that Rodrigues:

> failed to conduct due diligence on Best Rescue at any time. [Rodrigues] also failed to make himself aware of Hewitt's loan origination fee. [Rodrigues] failed to have an attorney review the Security Agreement and Promissory Notes on [the Trust's] behalf. [Rodrigues] breached his fiduciary duties by relying whole-heartedly on Hewitt, failing to take the actions listed above, and failing to question the absence of long-term financing for Best Rescue prior to recommending and authorizing continued investment. All of these actions led to the imprudent investment, most of which could have been avoided, had [Rodrigues] fulfilled his duties. In addition, these actions allowed Hewitt to continue to earn loan origination fees for loans in breach of Hewitt's fiduciary duties.

Thus, the U.S. District Court concluded that Rodrigues enabled Hewitt to breach his fiduciary duties and, therefore, was liable under 29 U.S.C. § 1105. The court also concluded, however, that Rodrigues was not liable on Count 3.

---

any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. . . .

29 U.S.C. § 1002(21)(A) (2012).

In determining the scope of Rodrigues's liability, the U.S. District Court recited 29 U.S.C. § 1109(a) (2012) stating, in relevant part:

> (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary[.]

It ultimately entered judgment against Rodrigues in the amount of $850,000.00. The United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") affirmed the U.S. District Court's decision in *De Costa v. Rodrigues*, No. 08-16386, 2009 WL 1489637 (9th Cir. May 28, 2009).

In his Motion for Partial Summary Judgment, Rodrigues expanded on his indemnity claim. Having no written indemnification agreement with UPW, Rodrigues cited to common law principles supporting an employer-principal's limited duty to indemnify its employee-agent in the context of employment agreements. Rodrigues cited similar principles in arguing that UPW was vicariously liable to the Trust for the damages arising from his actions. Additionally, Rodrigues argued that UPW should be found liable to him in negligence for a) assigning him to a position for which he was not sufficiently qualified or trained, and b) "failing to provide [him] sufficient information, directions and/or instructions regarding his obligations and liabilities under ERISA."

In opposition, UPW argued that Rodrigues had no right of indemnity because "ERISA preempts any alleged state law indemnity claim." Specifically, UPW argued that a breaching ERISA fiduciary does not have a right to indemnity under ERISA and that ERISA preempts Rodrigues's state-law indemnity claim because it is "related to" ERISA. UPW also argued that Rodrigues had not paid the federal court judgment yet, so his indemnity claim was premature, and that Rodrigues was not entitled to indemnity because he was an active, not a passive, wrongdoer.

7

C.    Summary Judgment Order

A hearing on the Motion for Partial Summary Judgment was held on September 15, 2009, although Rodrigues failed to provide this court with a transcript of the proceedings.    On October 7, 2009, the Circuit Court entered the Summary Judgment Order, reasoning in full:

> Kim v. Furikawa, 871 F.2d 1427 (9th Cir. 1989) supports that Rodrigues' indemnity claim in this case is preempted by ERISA and a breaching ERISA fiduciary, like Rodrigues, does not have an equitable right of contribution or indemnity. Indemnity is merely an extreme form of contribution, and allowing or implying a right of indemnity by a breaching ERISA fiduciary would not be consistent with ERISA's goal of deterring breaches of fiduciary duty.  See also Meoli v. American Med. Services of San Diego, 35 F. Supp.[ ]2d 761, 764 (S. D. Ca[l]. 1999).

Therefore, the Circuit Court granted summary judgment in favor of UPW.   The court subsequently awarded UPW attorneys' fees in the amount of $4,528.79 and costs in the amount of $156.78 and entered the Final Judgment in favor of UPW.

II.   Standards of Review

Summary judgment

An appellate court "reviews the grant or denial of summary judgment *de novo*, using the same standard applied by the circuit court." *State ex rel. Anzai v. City & Cnty. of Honolulu*, 99 Hawai'i 508, 515, 57 P.3d 433, 440 (2002) (citing *Bitney v. Honolulu Police Dept.*, 96 Hawai'i 243, 250, 30 P.3d 257, 264 (2001)).   "A court may enter judgment for the non-moving party on a motion for summary judgment where there is no genuine issue of material fact and the non-moving party is entitled to judgment as a matter of law." *Id.* (brackets omitted) (quoting *Konno v. Cnty. of Haw.*, 85 Hawai'i 61, 76, 937 P.2d 397, 412 (1997)).

ERISA preemption

Questions of federal preemption under ERISA are reviewed by this court de novo.   *Ditto v. McCurdy*, 90 Hawai'i 345, 351, 978 P.2d 783, 789 (1999).

III. Discussion

On appeal, Rodrigues argues that the Circuit Court erred in holding that ERISA preempted his indemnification claim against UPW.[6] In answer, UPW restates the arguments made before the trial court.

A. ERISA Policies, Purposes, and Actions

As to employee benefit plans, Congress declared ERISA's policy to be

> to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b) (2012) (Congressional findings and declaration of policy). In other words, "Congress enacted ERISA . . . to protect plan participants and beneficiaries from abuses and mismanagement in the administration of employee pension and benefit plans." *Haw. Laborers' Trust Funds v. Maui Prince Hotel (HLTF)*, 81 Hawai'i 487, 493, 918 P.2d 1143, 1149 (1996).

An additional "purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Golden Gate Rest. Ass'n v. City & Cnty. of S.F.*, 546 F.3d 639, 647 (9th Cir. 2008) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004)). Such uniformity protects plan administrators from the "burden that would be imposed by a patchwork scheme of regulation," *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11-12 (1987); the relative simplicity also reduces costs for employers, *Golden Gate*, 546 F.3d at 647.

ERISA-related claims may be brought pursuant to ERISA provisions or as separately authorized, such as by state

---

[6] While Rodrigues asserted various bases for his indemnification claim below, only his respondeat superior claim was actually such a claim. The remainder were instead negligence claims asserted against UPW based on alleged torts distinct from Rodrigues's actions and the harm caused by those actions. However, as both the parties and the Circuit Court appeared to regard the different theories as a single indemnification claim, we likewise regard his claim as precisely that.

statutory or common law, subject to ERISA's preemption provisions. Generally, those claims properly brought as ERISA claims are either expressly authorized therein, *see* 29 U.S.C. § 1132 (2012), or recognized under federal common law specific to ERISA. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989) ("[C]ourts are to develop a 'federal common law of rights and obligations under ERISA-regulated plans.'" (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987))).

    B.    Federal Preemption of State Laws

        Regarding preemption generally, "state and local laws enjoy a presumption against preemption when they 'clearly operate in a field that has been traditionally occupied by the States.'" *Golden Gate*, 546 F.3d at 647 (brackets omitted) (quoting *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997)). Indeed, "the historic police powers of the States are not to be superseded by Federal Act unless that is the clear and manifest purpose of Congress." *HLTF*, 81 Hawaiʻi at 492, 918 P.2d at 1148 (brackets and ellipsis omitted) (quoting *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992)) (internal quotation marks omitted). "The question whether a certain state action is preempted by federal law is one of congressional intent. The purpose of Congress is the ultimate touchstone." *Bd. of Trs. of W. Conference of Teamsters Pension Trust Fund v. H.F. Johnson, Inc.*, 830 F.2d 1009, 1016 (9th Cir. 1987) (quoting *Pilot Life*, 481 U.S. at 45); *accord HLTF*, 81 Hawaiʻi at 492, 918 P.2d at 1148.

        As to preemptive intent:

> Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose. If a federal law contains an express pre-emption clause, it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains. Pre-emptive intent may also be inferred if the scope of the statute indicates that Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state and federal law.

*Altria Group, Inc. v. Good*, 555 U.S. 70, 76-77 (2008) (citations omitted); *accord AFL Hotel & Rest. Workers Health & Welfare Trust Fund v. Bosque (AFLH)*, 110 Hawaiʻi 318, 323, 132 P.3d 1229, 1234

(2006).

Federal law may preempt state law either expressly or impliedly. *See Altria Grp.*, 555 U.S. at 76-77 ("Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose."). Even where "federal law contains an express pre-emption clause, it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains." *Id.* at 76.

Implied preemption occurs when "the scope of a statute indicates that Congress intended federal law to occupy a field exclusively, or when state law is in actual conflict with federal law." *Haw. Mgmt. Alliance Ass'n v. Ins. Comm'r (HMAA)*, 106 Hawai'i 21, 30, 100 P.3d 952, 961 (2004) (citation omitted) (quoting *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995)) (internal quotation marks omitted). Such implied conflict preemption arises "where it is impossible for a private party to comply with both state and federal requirements or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (citations omitted) (quoting *Freightliner Corp.*, 514 U.S. at 287) (internal quotation marks omitted).

> C. *Kim* and *Meoli*, on which the Circuit Court relied in granting summary judgment, did not resolve the preemption issue because they did not address whether ERISA preempted state indemnity claims.

In concluding that Rodrigues's indemnity claim was preempted, the Circuit Court relied on *Kim v. Fujikawa*, 871 F.2d 1427 (9th Cir. 1989), in which the Ninth Circuit held that ERISA did not provide a right of contribution to a breaching fiduciary against co-fiduciaries. *Id.* at 1431-33. Because ERISA does not expressly grant a right of contribution, *Kim* analyzed whether such a right could be implied in the statute:

> [T]he Supreme Court has noted that, in light of "ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a 'comprehensive and reticulated statute,'" it seems clear that "Congress did *not* intend to authorize other remedies [under ERISA] that it simply forgot to incorporate expressly." [*Mass. Mut. Life Ins. Co. v.* ]*Russell*, 473 U.S. [134, 146 (1985)] (quoting

> *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S.
> 359, 361 . . . (1980)). Given this observation, we cannot
> agree with Fujikawa's contention that Congress implicitly
> intended to allow a cause of action for contribution under
> ERISA. *See Russell*, 473 U.S. at 145 . . . ("'The federal
> judiciary will not engraft a remedy on a statute, no matter
> how salutary, that Congress did not intend to provide.'")
> (quoting *California v. Sierra Club*, 451 U.S. 287, 297 . . .
> (1981)). Indeed, implying a right of contribution is
> particularly inappropriate where, as in this case, the party
> seeking contribution "'is a member of the class [e.g.,
> fiduciaries] whose activities Congress intended to regulate
> for the protection and benefit of an entirely distinct class
> [e.g., ERISA plans],'" and where there is no indication in
> the legislative history "that Congress was concerned with
> softening the blow on joint wrongdoers." *Texas Industries,
> Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639 . . .
> (1981) . . . .

*Id.* at 1432-33.

The Circuit Court also cited to *Meoli v. Am. Med. Servs. of San Diego*, 35 F. Supp. 2d 761 (S.D. Cal. 1999), which, relying in part on *Kim*, concluded that ERISA does not authorize a right of indemnification for a breaching fiduciary against co-fiduciaries. *Id.* at 762-65. *Meoli* also observed that "[a]n analysis of ERISA reveals an intent to protect participants, beneficiaries and plans, and remedies are provided to fiduciaries only insofar as they advance that purpose." *Id.* at 764 (quoting *NARDA, Inc. v. R.I. Hosp. Trust Nat'l Bank*, 744 F. Supp. 685, 696 (D. Md. 1990)) (internal quotation marks omitted).

While *Kim* and *Meoli* each concluded that Congress did not intend to grant a right of either contribution or indemnification to breaching fiduciaries under ERISA, neither their reasoning nor the Circuit Court's analysis addressed whether Congress intended to bar such state law claims. Because Rodrigues brought his claim as a state law claim, *Kim* and *Meoli* are inapposite as they do not address the question of whether ERISA preempts state indemnity claims. With respect to ERISA's preemption of state claims, we are bound by Hawaiʻi Supreme Court precedents on this issue. We therefore turn to applying the preemption analysis established by our supreme court.

D. Under the Hawaiʻi Supreme Court's tests for ERISA preemption, Rodrigues's claim for indemnification is neither expressly nor impliedly preempted.

1. Rodrigues's indemnification claim is not expressly preempted.

ERISA expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."[2/] 29 U.S.C. 1144(a) (2012). As this "broadly worded provision is 'clearly expansive'" but necessarily not infinite in scope, *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 146 (2001) (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co. (Travelers)*, 514 U.S. 645, 655 (1995)), courts have at times found application of § 1144 to be a bedeviling task. *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 980 (9th Cir. 2001) ("It is with great trepidation that we tread into the field of ERISA preemption. . . . '[D]eveloping a rule to identify whether ERISA preempts a given state law . . . has bedeviled the Supreme Court.'" (footnote omitted) (quoting *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson*, 201 F.3d 1212, 1216 (9th Cir. 2000), *as amended by* 208 F.3d 1170 (9th Cir. 2000))); *see also Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc. (Dillingham)*, 519 U.S. 316, 335 (1997) (Scalia, J., concurring) ("Our earlier [preemption] cases sought to apply faithfully the statutory prescription that state laws are pre-empted 'insofar as they . . . relate to any employee benefit plan.' . . . But applying the 'relate to' provision according to its terms was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else." (citations omitted)); *Travelers Ins. Co. v. Cuomo*, 14 F.3d 708, 717 (2d Cir. 1993) ("In truth, [§ 1144] is a veritable Sargasso Sea of obfuscation[.]").

The Hawaiʻi Supreme Court, however, has established an analytic framework for determining whether a state law is expressly preempted as "relat[ing] to" an employee benefit plan. The court has held that "[i]n order for the state law claim to be 'related to,' and thus preempted by ERISA, [Hawaiʻi precedent]

---

[2/] "A 'State law' under the statute includes 'all laws, decisions, rules, regulations, or other State action having the effect of law, of any State.' [29 U.S.C. ]§ 1144(c)(1)[ (2012)]. State common law claims fall within this definition and, therefore, are subject to ERISA preemption." *Nat'l Sec. Systems, Inc. v. Iola*, 700 F.3d 65, 83 (3d Cir. 2012) (citing *Ingersoll-Rand v. McClendon*, 498 U.S. 133, 140 (1990 ); *Pilot Life*, 481 U.S. at 48).

. . . requires not just the existence of an ERISA plan, but questions involving the plan's administration and the benefits provided." *AFLH*, 110 Hawai'i at 327, 132 P.3d at 1238.

In *AFLH*, an ERISA plan, through enforcement of a subrogation agreement, sought reimbursement from beneficiaries for medical expense benefits it had paid where the beneficiaries had also recovered monies from the third-parties liable for having caused their expenses. *Id.* at 320-21, 132 P.3d at 1231-32. The Hawai'i Supreme Court addressed the question of whether, under these circumstances, ERISA preempted "a [plan's] state law breach of contract claim [brought] against a plan beneficiary." *Id.* at 322, 132 P.3d at 1233. In holding that the claims were not preempted, the court noted that it had earlier adopted the approach of the federal Eighth Circuit Court of Appeals for determining express preemption. The Hawai'i Supreme Court stated:

> Recognizing that "relate to" cannot be infinite in scope, this court in *Garcia* [*v. Kaiser Found. Hosps.*, 90 Hawai'i 425, 978 P.2d 863 (1999)] adopted the approach of the United States Court of Appeals for the Eighth Circuit, holding that state law claims are expressly preempted where they rely on a person's "status as a beneficiary under the ERISA plan *and arise from the administration of benefits under the plan*." *Garcia*, 90 Hawai'i at 433, 978 P.2d at 871 (citing *Kuhl v. Lincoln National Health Plan of Kansas City, Inc.*, 999 F.2d 298, 303-04 (8th Cir.1993)).

*Id.* at 324, 132 P.3d at 1235 (original brackets omitted).

The court noted that with respect to the plan's breach of contract claim, there was no claim regarding improperly withheld benefits, "no need to inquire into the medical services provided, and no need to inquire into the administration of the plan or its benefit structures." *Id.* at 325, 132 P.3d at 1236. The court held that express ERISA preemption of a state law claim required not only the existence of an ERISA plan, but "questions involving the plan's administration and the benefits provided." *Id.* at 327, 132 P.3d at 1238. Because the plan's state law claim for breach of the subrogation agreement did not implicate the plan's administration and the benefits provided, the court concluded that there was no express ERISA preemption. *Id.*

Similarly, in this case, Rodrigues's indemnity claim against UPW does not implicate the plan's administration or the

benefits provided. Rodrigues's liability to the plan for breach of his fiduciary duties has already been established. The resolution of Rodrigues's indemnity claim against UPW, which is based on theories of respondeat superior and UPW's negligence against Rodrigues, do not raise questions involving the plan's administration and the benefits provided. Therefore, under *AFLH*, Rodrigues's state indemnity claim is not expressly preempted by ERISA.

> 2.   Rodrigues's indemnity claim is not impliedly preempted.

Rodrigues argues that, under *AFLH*, his indemnity claim is not impliedly preempted by ERISA.[8] We agree.

In *AFLH*, the supreme court stated that "a state law 'will be deemed impliedly preempted if it conflicts with § 1132(a) [9] ("conflict" preemption) or if Congress intended ERISA to occupy the entire field ("field" preemption).'" *Id.* at 323, 132 P.3d at 1234 (brackets and ellipsis omitted) (quoting *HMAA*, 106 Hawai'i at 30, 100 P.3d at 961)). With respect to field preemption, the court noted that it has "previously held that [field preemption] does not apply in the ERISA context because the existence of an express preemption clause in ERISA and the fact that health care is a subject of traditional state regulation demonstrate no clear and manifest intent to supersede state law." *Id.* at 323, 132 P.3d at 1234 (citing *HMAA*, 106 Hawai'i at 30-31, 100 P.3d at 961-62. As in *AFLH*, implied field

---

[8]   UPW's answering brief does not address Rodrigues's arguments against implied preemption.

[9]   29 U.S.C. § 1132 provides in relevant part:

(a) Persons empowered to bring a civil action

A civil action may be brought--

. . . .

> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

29 U.S.C. § 1132(a)(3) (2012).

preemption does not apply to Rodrigues's indemnity claim.

With respect to implied conflict preemption, the test applied by the Hawai'i Supreme Court is whether the state-law cause of action "duplicates, supplements, or supplants the ERISA civil enforcement remedy[.]" *Id.* (quoting *HMAA*, 106 Hawai'i at 31, 100 P.3d at 962). Such a state-law cause of action "conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* (quoting *HMAA*, 106 Hawai'i at 31, 100 P.3d at 962). In *AFLH*, the court concluded that since ERISA's civil enforcement remedy provision (29 U.S.C. § 1132(a)(3)) did not provide a legal remedy for the reimbursement of expenses sought by the plan, the plan's state law claim did not duplicate or supplant ERISA's civil enforcement remedy. *Id.* Similarly, in this case, ERISA does not provide a civil enforcement remedy for a fiduciary's claim for indemnity or contribution. *See Kim*, 871 F.2d at 1432-33; *Meoli*, 35 F. Supp. 2d at 762-65. Therefore, Rodrigues's state indemnity claim does not duplicate or supplant ERISA's civil enforcement remedy.

Whether Rodrigues's claim supplements ERISA's remedies or instead is regarded as an independent cause of action, "turns on whether [indemnification] liability would exist only because of the ERISA plan; that is, whether the [purported indemnitor's] potential liability 'derives entirely from the particular rights and obligations established by the benefit plan.'" *AFLH*, 110 Hawai'i at 323-24, 132 P.3d at 1234-35 (original brackets omitted) (quoting *Aetna Health*, 542 U.S. at 213). Here, though, UPW's alleged obligation to indemnify derives not from the plan's "particular rights and obligations," but rather, from the alleged duties UPW owed to Rodrigues by virtue of UPW designating Rodrigues as its agent to serve as a plan fiduciary. Rodrigues's indemnification claim does not "exist only because of the ERISA plan" and is not a remedy that supplements one already available under ERISA. Therefore, Rodrigues's indemnity claim does not duplicate, supplement, or supplant an existing ERISA remedy, and it is not conflict preempted.

E.    While not preempted, Rodrigues cannot prevail on his
      claim because we affirm the lower court on grounds that
      Rodrigues's own negligence defeats his indemnification
      claim.

Rodrigues's claim, while surviving preemption,
nevertheless fails because, as explained *infra*, an agent's claim
for indemnification against his principal will not lie where that
claim is premised solely on a theory of the principal's vicarious
liability for the harmful acts of its agent.  We therefore affirm
the judgment on this alternative ground.

The Circuit Court found the preemption issue
dispositive; hence, despite UPW's argument below, the Circuit
Court did not address whether Rodrigues's negligence was a bar to
his indemnity claim.  However, it is well-established that "an
appellate court may affirm a judgment of the lower court on any
ground in the record that supports affirmance." *Canalez v. Bob's
Appliance Serv. Ctr., Inc.*, 89 Hawai'i 292, 301, 972 P.2d 295,
304 (1999) (quoting *Gold v. Harrison*, 88 Hawai'i 94, 103 n.7, 962
P.2d 353, 362 n.7 (1998)).  This principle is perhaps most
appropriately applied in the review of summary-judgment
proceedings because an appellate court "steps into the shoes of
the trial court and applies the same legal standard as the trial
court applies." *Arquette v. State*, 128 Hawai'i 423, 433 n.14,
290 P.3d 493, 503 n.14 (2012) (quoting *Blaisdell v. Dep't of Pub.
Safety*, 119 Hawai'i 275, 284, 196 P.3d 277, 282 (2008)).  Thus,
it is appropriate for us to consider whether Rodrigues's
indemnification claim may have merit.

Rodrigues argued below that, in certain circumstances,
a principal has a duty to indemnify its agent, citing sections
438 and 439 of the Restatement (Second) of Agency.[10/]  However,

---

[10/]    In relevant part, these sections provide that:

In the absence of terms to the contrary in the agreement of
employment, the principal has a duty to indemnify the agent where
the agent . . . suffers a loss which, because of their relation, it
is fair that the principal should bear."

RESTATEMENT (SECOND) OF AGENCY § 438(2)(b) (1958).

Unless otherwise agreed, a principal is subject to a duty to
exonerate an agent who is not barred by the illegality of his
conduct to indemnify him for . . . payments of damages to third

17

the commentary to section 439 clarifies that "[a]n agent who
. . . is guilty of negligence in the performance of his duties to
the principal, is not entitled to indemnity for losses caused by
such conduct." § 439 cmt. d; *accord* RESTATEMENT (THIRD) OF AGENCY
§ 8.14 cmt. b (2005) ("A principal's duty to indemnify does not
extend to losses that result from the agent's own negligence
. . . ."). Even more specifically, in the context of litigation
initiated against an agent, "[a] principal does not have a duty
to indemnify an agent against . . . losses caused solely by
wrongful acts committed by the agent." RESTATEMENT (THIRD) OF AGENCY
§ 8.14 cmt. d.

That an agent is not entitled to indemnification for
damages arising solely from his or her own misconduct is well-
established in the law. *See, e.g.*, *Gaines v. Walker*, 986 F.2d
1438, 1442 (D.C. Cir. 1993) ("[T]he oft-repeated rule is that a
principal is ordinarily not obliged to indemnify an agent for the
agent's own tortious conduct."); *Pearson Ford Co.*, 78 Cal. Rptr.
at 282 (holding that the invocation of non-contractual implied
indemnity in California requires that the claimant "[d]id not
actively nor affirmatively participate in the wrong"); *Shair-A-
Plane v. Harrison*, 189 N.W.2d 25, 27 (Minn. 1971) ("[W]e know of
no rule of law whereby, absent an express agreement to the
contrary, a duty of indemnity is imposed upon a principal for
losses incurred [d]ue to the agent's fault. Rather, the rule is
that such a duty does not exist under those circumstances."
(citing RESTATEMENT (SECOND) OF AGENCY § 440(a) & cmt. a)); *Ramos v.
Browning Ferris Indus. of S. Jersey, Inc.*, 510 A.2d 1152, 1158-59
(N.J. 1986) ("Ordinarily, a party who is at fault may not obtain
indemnification for its own acts." (citing *Cartel Capital Corp.
v. Fireco of N.J.*, 410 A.2d 674, 683 (N.J. 1980))).

In the Circuit Court, Rodrigues claimed that UPW had a
duty to indemnify him because UPW was "vicariously liable" to the
Trust for Rodrigues's actions. However, it is widely recognized

---

persons which he is required to make on account of the authorized
performance of an act which constitutes a tort or a breach of
contract[.]

RESTATEMENT (SECOND) OF AGENCY § 439(c) (1958).

that a party is personally liable for his own negligence and misconduct even if he or she was acting as an agent. *See, e.g.,* *Finnell v. Pitts*, 132 So. 2, 4 (Ala. 1930) ("We believe that the rule is universal that an agent is not excused from personal liability for a tort which he commits for and in the name of his principal, whether the principal is liable to suit or not."); *Galie v. RAM Assocs. Mgmt. Servs., Inc.*, 757 P.2d 176, 177 (Colo. App. 1988) ("[A]n agent may be held personally liable for torts committed by him . . . even though the tortious acts were done on behalf of his principal." (citing *Sodal v. French,* 531 P.2d 972 (Colo. App. 1974))); *White v. Collins Bldg., Inc.*, 704 S.E.2d 307, 312 (N.C. Ct. App. 2011) ("[O]ne is personally liable for all torts committed by him . . . notwithstanding that he may have acted as agent for another or as an officer for a corporation." (citing *Strang v. Hollowell,* 387 S.E.2d 664, 666 (N.C. Ct. App. 1990))); *Comer v. Risko*, 833 N.E.2d 712, 716 (Ohio 2005) ("An agent who committed the tort is primarily liable for its actions, while the principal is merely secondarily liable." (citing *Losito v. Kruse,* 24 N.E.2d 705 (Ohio 1940))); *Gilbert v. Mid-South Mach. Co.*, 227 S.E.2d 189, 193 (S.C. 1976) ("An agent's liability for his own tortious acts is unaffected by the fact that he acted in his representative capacity." (citing *Lawlor v. Scheper,* 101 S.E.2d 269 (S.C. 1957))); *Whitson Co. v. Bluff Creek Oil Co.*, 278 S.W.2d 339, 347 (Tex. Civ. App. 1955) ("[A]n agent is always primarily liable for his own torts . . . .").

To allow a culpable agent to shift the loss to his principal, who is merely vicariously liable, would unjustly enrich the culpable agent, and be contrary to the purposes of indemnification. *See* RESTATEMENT (SECOND) OF TORTS § 886B (1979) ("If two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability."); *Brooks v. Dana Nance & Co.*, 113 Hawai'i 406, 416-17, 153 P.3d 1091, 1101-02 (2007) (recognizing the Restatement of Torts test, turning on whether the party from whom indemnity is sought would otherwise be unjustly enriched). The

law of indemnity, in the case of vicarious liability, works in favor of the vicariously liable party, not against it. *See Howard Univ. v. Watkins*, 857 F. Supp. 2d 67, 72 (D.D.C. 2012) ("Indemnity has been granted to prevent unjust enrichment . . . where the *indemnitee* was liable only vicariously for the conduct of the *indemnitor*[.]" (emphasis added) (quoting *Wash. D.C. v. Wash. Hosp. Ctr.*, 722 A.2d 332, 340 n.9 (D.C. 1998)) (internal quotation marks omitted)); *McCarthy v. Turner Constr., Inc.*, 953 N.E.2d 794, 798-99 (N.Y. 2011) ("Common-law indemnification is generally available in favor of one who is held responsible solely by operation of law because of his relation to the actual wrongdoer." (quoting *Mas v. Two Bridges Assoc. by Nat'l Kinney Corp.*, 554 N.E.2d 1257, 1263 (N.Y. 1990)) (internal quotation marks omitted)); RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT LIABILITY § 22(a)(2)(i) (2000) (permitting non-contractual indemnity where "the *indemnitee* . . . was not liable except vicariously for the tort of the *indemnitor*[.]" (emphasis added)).

The U.S. District Court's FOF/COL clearly establish that Rodrigues was held liable for his own actions (or lack thereof). Rodrigues cites to no authority supporting his contention that he is somehow relieved of liability, or that he is entitled to indemnification from UPW despite his own negligent acts, merely because UPW was his employer. Furthermore, Rodrigues cites to no authority for the proposition that he is entitled to indemnification because he, in his words, "did not benefit in any manner" from those acts for which he was adjudicated negligent, and we hold that, even if true, such a fact would be immaterial. Because Rodrigues is responsible for his own conduct, he is not entitled to be indemnified for his negligent acts as a matter of law.

Therefore, we hold that Rodrigues's indemnification claim is not viable under the law of indemnity.[11]

---

[11]    Rodrigues also argued that UPW was liable to him for its negligence in hiring Rodrigues to serve as the Trust's administrator and for not properly instructing him. Whether UPW is separately liable to Rodrigues for breaching some duty in negligence, however, is a completely distinct issue from whether Rodrigues is entitled to the indemnification he sought in his Complaint.

IV.   Conclusion

Therefore, the October 7, 2009 Order Denying Plaintiff's Motion for Partial Summary Judgment as to Liability of Defendant United Public Workers, AFSCME Local 646, AFL-CIO, Filed June 19, 2009, and Granting Summary Judgment Against Plaintiff; the November 30, 2009 Order Granting in Part Defendant's Motion for Attorneys' Fees and Costs, Filed October 13, 2009; and the December 14, 2009 Final Judgment, entered in the Circuit Court of the First Circuit are affirmed.


On the briefs:

Eric A. Seitz,
Lawrence I. Kawasaki,
Della A. Belatti, and
Ronald N.W. Kim,
(Eric A. Seitz, Attorney at
Law, a Law Corporation)
for Plaintiff-Appellant.

James E.T. Koshiba and
Charles A. Price
(Koshiba Agena & Kubota)
for Defendant-Appellee.